UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **JO PATTERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:10-00422** |
| | ) | **Judge Sharp** |
| **THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

In April of 2009, Plaintiff Jo Patterson, a black female, was terminated from her position as the Human Resource Director for Support Personnel at the Metropolitan Nashville Public School System ("MNPS") purportedly because of an extremely unfortunate and clearly improper hiring decision. She filed suit under federal and state statutes, but, in response to Defendant Metropolitan Government of Nashville and Davidson County's Motion for Summary Judgment (Docket No. 26), limits her claims to employment discrimination based on race and sex in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. 4-21-101 *et seq.*[1]

## I. FACTUAL SUMMARY

[1] Plaintiff's Amended and Supplemental Complaint contained claims under Title VII and the THRA, as well as a claim for intentional employment discrimination based upon race in violation of 42 U.S.C. § 1981, and a claim for deprivation of civil rights under color of law in violation of 42 U.S.C. § 1983. Plaintiff admits she has insufficiently pled and/or lacks evidence to support the latter two claims, and has agreed to a voluntary dismissal of those claims. (Docket No. 33 at 23).

This litigation has as its genesis the September 2007 hiring of Ronald Boykin ("Boykin") as an education assistant by MNPS. In seeking employment, Boykin wrote in his application that he had "resigned during a suspension without pay for misconduct" from his prior employment. That statement was not investigated and, when a traffic stop in March 2009 revealed Boykin had been indicted in Hamilton County, Tennessee on charges of rape, attempted sexual battery by an authority figure, and sexual battery by an authority figure, a media frenzy ensued.

Upon the discovery of Boykin's background, three MNPS employees were asked to resign or face termination. Those employees included Plaintiff, as well as Darilyn Mason ("Mason") and Melissa Mundy ("Mundy"), both of whom are white females who worked under Plaintiff's supervision.

As director of the support staff hiring division, Plaintiff was responsible for hiring support personnel, including education assistants, and oversaw a staff of seven individuals. Mundy, who worked as a clerk in the office and was directly below Mason in the chain of command, initially reviewed Boykin's application. Mason later processed Boykin's paperwork, but did not review his application.

To Plaintiff's knowledge, neither Mundy nor anyone else followed up on the startling statement in Boykin's application. Plaintiff claims she was never made aware of the statement prior to the March 2009 traffic stop and ensuing imbroglio.

By the time of the traffic stop, Boykin had transferred from an educational assistant position to a teaching position within MNPS. At the time of the transfer, Gene Foster ("Foster")[2] was the executive director of human resources for grades 9-12, responsible for hiring teachers in those grade

[2] Foster is now deceased.

levels. In transferring Boykin into a teaching position, Foster performed a sex abuse registry check, a health abuse registry check, a revoked or disciplinary action against a teacher check, and a Department of Children's Services check. He did not, however, investigate the statement in Boykin's application, even though he admittedly was aware of that statement. Foster apparently believed that any "red flags" in the application would have been resolved during the initial hiring process.

As a result of his involvement in Boykin's continued employment, Foster received a five day suspension. That punishment was recommended by Dr. June Keel ("Keel"), the Assistant Superintendent of Human Resources for MNPS, who was also the individual that recommended Plaintiff's termination, and was the direct supervisor of both Plaintiff and Foster. Additionally, due to the serousness of this mistake, Keel offered her own resignation to Dr. Jesse Register ("Register"), Director of Schools. Register declined to accept her resignation.

## II. LEGAL DISCUSSION

To establish her claims of race and sex discrimination under both Title VII and the THRA, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) despite her qualifications and satisfactory performance, she suffered an adverse employment action; and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly-situated, non-protected individual. See, Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006) (listing the elements of a *prima facie* case under Title VII); Howington v. Quality Restaurant Concepts, LLC, 298 Fed. Appx. 436, 437 n.1 (6th Cir. 2008) (noting that claims under the THRA follow the same analysis as those under Title VII). Defendant argues that Plaintiff "cannot establish a *prima facie* case of discrimination based upon

her termination, because there is no employee who was not in the protected class who is similarly situated." (Docket No. 27 at 11).

"In employment discrimination cases, the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated'; rather, [the Sixth Circuit has] held that the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.' " Knox v. Neaton Auto Prods. Mfg., Inc., 375 F.3d 451, 458 (6th Cir. 2004). "Thus, to establish a prima facie case, [Plaintiff] must identify at least one similar, non-protected employee guilty of conduct of 'comparable seriousness' to the conduct for which she was fired but whom management treated more leniently." Trout v. First Energy Generation Corp., 339 Fed. Appx. 560, 564 (6th Cir. 2009). "In assessing the relative seriousness of the employees' acts, a court may consider 'whether the individuals have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Colvin v. Veterans Admin. Medical Center, 390 Fed. Appx. 454, 458 (6th Cir. 2010) (citation omitted).

A reasonable jury could conclude that Plaintiff and Foster were similarly situated. Both were responsible for hiring MNPS employees within their respective lines of authority, and both were responsible for Boykin being a MNPS employee. Further, they shared the same supervisor, and it was that supervisor who made the discipline recommendations.

The conclusion that Plaintiff and Foster could be viewed by a jury as being similarly situated employees remains even though Foster was responsible for transferring an employee who was

already in the system, whereas Plaintiff was responsible for the initial hire since, as noted, "[e]xact correlation is not required." Smith v. Leggett Wire Co., 220 F.3d 752, 762 (6th Cir. 2000). In fact, a reasonable jury could arguably view Foster as more culpable since he admittedly saw the "red flag" in Boykin's application, assumed (reasonably or not – another jury question) that others had conducted an appropriate inquiry into the underlying reasons for Boykin's termination, and did not contact Plaintiff's staff to assure himself that such an investigation had occurred.

The same rationale applies to the question of whether or not the stated reason for Plaintiff's termination was pretextual. That is, Plaintiff's involvement juxtaposed with Foster's involvement in the employment of Boykin presents a jury question as to whether (1) the proffered reason for Plaintiff's termination was the actual reason and/or (2) the Boykin hiring fiasco was insufficient to explain Defendant's action in relation to Plaintiff. See, Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir.1994) (identifying the threes ways in which an employee may show that the stated reason for an employment decision was a lie). "'[T]o survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale,' so, once the employer has proffered a non-discriminatory explanation for its action, the plaintiff 'd[oes] not need to produce additional evidence to support a finding of pretext; the evidence that [s]he produce[s] in support of h[er] prima facie case may . . . suffice to show a genuine issue of material fact concerning pretext." Ross v. Pfizer, Inc., 375 Fed. Appx. 450, 454 (6th Cir. 2010) (quoting, Blair v. Henry Filters, Inc., 505 F.3d 517, 532-533 (6th Cir. 2007)).

In addition to its Motion for Summary Judgment, Defendant moves to strike Plaintiff's declaration. It argues Plaintiff does not state in the declaration that it is based on her personal

knowledge, and some of the "facts" contained therein are not within Plaintiff's knowledge. This Motion will be denied because the Court does not rely on Plaintiff's declaration in rendering this opinion.

Plaintiff's Motion to Strike Gross Misstatement of Fact will also be denied. The statement that Plaintiff "does not want to be held accountable for [her] actions" forms no basis in this Court's decision and, in any event, is not a factual statement, but an argument properly made in a reply brief.

## III. CONCLUSION

Based on the foregoing, the Motions to Strike filed by the parties will be denied. Defendant's Motion for Summary Judgment will be denied, except insofar as it seeks dismissal of Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983. With the ruling on the Motion for Summary Judgment, Defendant's Motion to Ascertain Status is rendered moot and will be denied as such.

An appropriate Order will be entered.

Kevin H. Sharp

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE